IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
FEB 21 2019
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

ERIN HOWERTON DAIL,

    Plaintiff,

v.

CIVIL ACTION NO. 2:18-cv-640

BANK OF AMERICA, N.A.,

and

EQUITY TRUSTEES, L.L.C.,

    Defendants.

## *MEMORANDUM OPINION AND ORDER*

Before the Court are Plaintiff Erin Howerton Dail's ("Dail") Motion to Remand and Defendant Bank of America, N.A.'s ("BANA") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Based on the reasoning below, Dail's Motion to Remand is **DENIED**, BANA's Motion to Dismiss is **GRANTED**, and the matter is **DISMISSED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Dail is a citizen of Virginia. ECF No. 1-3 at ¶ 1. BANA is a citizen of North Carolina. ECF No. 1 at 3. Co-Defendant Equity Trustees ("Equity") is a citizen of Virginia. *Id.* at 4. Dail owns the property located at 2601 Sterling Point Drive in Portsmouth, Virginia. ECF No. 1-3 at ¶ 1. On December 30, 2005, Dail entered into a mortgage loan contract as a borrower. *Id.* at ¶ 5. The loan was evidenced by a note and secured by a Deed of Trust. *Id.* The obligations of both parties under the Deed "are subject to any requirements and limitations of Applicable Law." *Id.* at 20. The Deed defines "Applicable Law" as "all controlling federal, state, and local statutes, regulations, ordinances, and administrative rules and orders." *Id.* at 11. "Applicable Law"

1

includes the Real Estate Settlement Procedures Act ("RESPA"), Regulation X, as they may be amended, which the Deed defines as "all requirements and restrictions that are imposed in regard to a 'federally related mortgage loan' even if the Loan does not qualify as a 'federally related mortgage loan under RESPA.'" *Id.*

In 2009, BANA took over servicing Dail's mortgage. *Id.* at ¶ 9. BANA did not provide Dail with any mortgage servicing information at least five months after the transfer. *Id.* at ¶ 10. As a result, Dail did not pay her mortgage. *Id.* at ¶ 11. As a result, in October 2010, BANA sent Dail a unilateral loan modification. *Id.* at ¶ 12.

In 2011, Dail fell on hard times; she became unemployed and began to pay increasingly higher medical expenses. *Id.* at ¶ 13. She therefore fell behind on her mortgage payments. *Id.* Dail and her husband, Thomas Dail ("Thomas"), attempted to obtain a loan modification but were denied. *Id.* at ¶ 15. In 2016, Thomas wrote to BANA and asked for an accurate payoff and reinstatement of the loan; that letter was never answered. *Id.* at ¶¶ 17–18. BANA planned to use Equity as its trustee to sell Dail's property at a foreclosure auction. *See id.* at ¶ 19. Equity originally had originally set the foreclosure for September 25, 2018 but that was changed to November 6, 2018. *Id.* at ¶¶ 19, 30. However, the foreclosure sale never occurred and has not been rescheduled. ECF No. 6 at 2; ECF No. 8 at 3.

On November 1, 2018, Dail filed her Complaint in the Circuit Court for the City of Portsmouth, Virginia. ECF No. 1-3 at 8. Dail alleges a breach of contract claim based on BANA's alleged violation of Regulation X; she also seeks an injunction to prevent BANA and Equity from executing the foreclosure sale. *Id.* at 5–7. Dail claims $423,786.00 in compensatory damages. *Id.* at 7. Dail also seeks to recover fees from Equity related to the foreclosure sale that has not yet occurred. *Id.*

2

On November 29, 2018, BANA removed the case to this Court on diversity jurisdiction grounds. ECF No. 1 at 1. In support, BANA alleges that Equity has been fraudulently joined or is a nominal party, so its citizenship should be disregarded for jurisdictional purposes. *Id.* at 4–6.

On December 6, 2018, BANA filed its Motion to Dismiss and argues that Dail fails to state a claim as to both of her counts. ECF Nos. 5–6. Dail did not respond to this Motion. However, on December 20, 2018, Dail did file a Motion to Remand and argued that Equity is a legitimate defendant. ECF Nos. 7–8. On January 16, 2019, BANA filed its response in opposition to Dail's Motion. ECF No. 13. Dail did not file a reply.

## II. LEGAL STANDARDS

### A. Motion to Remand

*1. General Standard*

Federal courts are courts of limited jurisdiction and may not exercise jurisdiction absent a statutory basis. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Unless a matter involves an area over which federal courts have exclusive jurisdiction, a district court has subject matter jurisdiction over a case only where the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

A defendant may remove any action from state court to federal court in which the federal court has jurisdiction. *See* 28 U.S.C. § 1441(a), (b). But, "[i]f at any time before final judgment it

appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A motion to remand may be submitted after removal of a case from state court, but the motion must be filed within thirty days of removal, unless the defect asserted is subject matter jurisdiction. 28 U.S.C. § 1447. On a motion to remand, the burden of establishing federal subject matter jurisdiction remains with the party seeking removal to the federal forum. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Moreover, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that removal jurisdiction is to be strictly construed in light of federalism concerns. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Therefore, if federal jurisdiction is doubtful, the case should be remanded. *See Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).

*2. Fraudulent Joinder and Nominal Parties*

The "fraudulent joinder" doctrine is an exception to the general diversity jurisdiction rule and allows a district court to "'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants.'" *See Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). To establish fraudulent joinder, the removing party must show either "outright fraud in the plaintiff's pleading of jurisdictional factors, or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Id.* (quoting *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999)) (emphasis in original). The party alleging fraudulent joinder bears a "heavy burden" of showing that "'the plaintiff cannot establish a claim even after [the Court] resolv[es] all issues of law and fact in the plaintiff's favor.'" *Johnson v. Am. Towers, L.L.C.*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)).

The concept of a "nominal party" is related but distinct from fraudulent joinder. *Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 264 (4th Cir. July 24, 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999)). The general rule is that the Court will only consider "real and substantial parties to the controversy" when determining whether diversity exists and should disregard any "nominal or formal parties." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980); *Wood v. Davis*, 18 How. 467, 469 (1856). In the context of whether a co-defendant needs to provide consent to removal, the Fourth Circuit has held that a nominal party exists when "a party ha[s] no immediately apparent stake in the litigation either prior or subsequent to the act of removal. In other words, the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013); *see Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 651 (E.D.N.C. 2014) (applying *Hartford Fire* in the context of establishing diversity jurisdiction for purposes of removal). This test "is a practical inquiry, focused on the particular facts and circumstances of a case." *Hartford Fire*, 736 F.3d at 260–61.

## B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations

in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint, . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("[the Court] may [also] consider . . . public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

### III. DISCUSSION

#### A. Motion to Remand

In its notice of removal, BANA argues that the Court has diversity jurisdiction over this case. ECF No. 1 at ¶¶ 10–29. It is undisputed that Dail is a citizen of Virginia, BANA is a citizen of North Carolina, and Equity is a citizen of Virginia. *Id.* at ¶¶ 13–15; ECF No. 8 at 5. It is also undisputed that the damages alleged are over $75,000. ECF No. 1 at ¶¶ 27–28; ECF No. 1-3 at 7. The parties dispute whether Equity has been fraudulently joined as a defendant and/or is a nominal party, and therefore whether or not Equity should or should not destroy complete diversity.

Equity's involvement in this matter stems solely from its position as BANA's trustee to hold the foreclosure sale on Dail's property. ECF No. 1-3 at ¶ 19. Dail seeks an injunction against Equity to hold this sale, damages "in the amount of costs and fees to avoid the foreclosure sale and a refund of all improperly applied foreclosure fees." *Id.* at 7. However, Equity has not held this sale at all and Dail has not alleged Equity ever charged her any foreclosure fees before having the sale. ECF No. 6 at 2; ECF No. 8 at 3.

Dail asserts that Equity's relationship to BANA as trustee is sufficient to demonstrate the key role Equity plays. In support, Dail cites to *Payne v. Bank of America, N.A.*, No. 3:09-cv-80, 2010 WL 546770 (W.D. Va. Feb. 11, 2010), where the court found that the trustee in that foreclosure action was not fraudulently joined and was a substantial party. *Id.* at *6–*7. However, that case has a markedly distinguishing factor from the case at bar: the *Payne* trustee had already performed the foreclosure sale, and therefore the plaintiff had laid out several specific allegations and claims against the trustee. *Id.* Here, it is undisputed that Equity has not performed the sale. ECF No. 6 at 2; ECF No. 8 at 3. In fact, Dail's Complaint is largely devoid of any allegations against Equity. *But see* ECF No. 1-3 at ¶ 19.

The relevant case law is clear: where the Complaint contains specific allegations against the trustee, such as posting notices to vacate or performing the foreclosure sale, the trustee is a substantial party. *Harris v. Matrix Fin. Servs. Corp.*, No. 3:18-cv-618, 2018 WL 6037524, at *4–*5 (E.D. Va. Nov. 16, 2018); *LaGrant v. U.S. Bank Nat'l Ass'n*, No. 3:14-cv-809, 2015 WL 1208967, at *3–*5 (E.D. Va. Mar. 16, 2015); *Payne*, 2010 WL 546770, at *6–*7. On the other hand, where the trustee is not mentioned in the allegations, and there are no allegations of a foreclosure sale, the trustee is fraudulently joined. *Lee v. Ocwen Loan Serv., L.L.C.*, No. 2:18-cv-221, 2018 WL 4365583, at *2–*3 (E.D. Va. July 31, 2018); *Wingate v. Ocwen Loan Serv.,*

7

*L.L.C.*, No. 2:18-cv-167, 2018 WL 3341186, at *4–*5 (E.D. Va. July 6, 2018); *Correll v. Bank of Am., N.A.*, No. 2:11-cv-477, 2012 WL 348594, at *6 (E.D. Va. Feb. 2, 2012); *Sherman v. Litton Loan Serv., L.P.*, 796 F. Supp. 2d 753, 759–61 (E.D. Va. 2011).

Because Dail has failed to adequately plead allegations against Equity, who has not executed the foreclosure sale, the Court finds that Equity is fraudulently joined.[1] Therefore, the Court will ignore Equity's citizenship for diversity purposes. The Court finds that it has proper diversity jurisdiction because Dail is from Virginia and BANA is from North Carolina.

## B. Motion to Dismiss

BANA's unopposed motion to dismiss argues both counts against it fail to state claims. First, as to breach of contract, BANA argues that Dail fails to state a claim because the cause of action is based on various RESPA violations, and (1) the specific RESPA regulations did not

---

[1] The case law is a bit vague as to whether a trustee like Equity here is a nominal party or is fraudulently joined because the two concepts share overlapping language regarding any "stake in the litigation" or "no possibility of establishing a cause of action." *See Lee*, 2018 WL 4365583, at *2–*3; *Wingate*, 2018 WL 3341186, at *4–*5; *Correll*, 2012 WL 348594, at *6; *Sherman*, 796 F. Supp. 2d at 759–61. However, the two doctrines are distinct and for good reason. The concept of a nominal party usually relates to instances where the party has a tangential interest that is not contemplated in the complaint. *Cf. Hartford Fire*, 736 F.3d at 262–63 (noting that an insurer is a nominal party because "it is not at all unusual for insurers to represent the interests of their insureds, it is unusual for them to assert this speculative an interest after the duties to defend and indemnify have already been satisfied."). For example, the citizenship of the beneficiary of a wrongful death action matters for diversity purposes, not that of the administrator because the administrator is a nominal party. *Messer v. Am. Gems, Inc.*, 612 F.2d 1367, 1373–75 (4th Cir. 1980). Ignoring the citizenship of a nominal party in determining diversity is a prudential action.

Fraudulent joinder, on the other hand, suggests that the party is illegitimately listed as a co-defendant and the plaintiff would have no recourse against that party. *Cf. Johnson v. Am. Towers, L.L.C.*, 781 F.3d 693, 704–06 (4th Cir. 2015) (holding that two co-defendants were fraudulently joined because the first co-defendant did not have the federal license and could not be held liable, and federal law preempted any state law claims against the other co-defendant). The reason for excluding this party's citizenship for diversity purposes is because the party should not even be a part of the lawsuit to begin with. *Cf. id.* As such, cases where the plaintiff sues a principal and an agent but cannot present any possible cause of action against an agent are cognizable under the fraudulent joinder doctrine. *See, e.g., Linnin v. Michielsens*, 372 F. Supp. 2d 811, 823–25 (E.D. Va. 2005) (finding employee co-defendant was fraudulently joined in matter against employer co-defendant); *Fleming v. United Teachers Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 661–63 (S.D.W. Va. 2003) (finding agent co-defendant was fraudulently joined in matter against principal co-defendant).

This matter involves a co-defendant who is a trustee for a mortgage servicer to set up a foreclosure sale, but the sale has not happened. The trustee is merely an agent of the mortgage servicer. Therefore, the trustee is fraudulently joined and not a nominal party.

exist at the time the Deed of Trust was executed, and (2) the alleged violations occurred beyond the statute of limitations. ECF No. 6 at 3–5.

When the Deed and the Note were executed, Regulation X was under the dominion of the United States Department of Housing and Urban Development ("HUD"). 12 U.S.C. §§ 2602(6), 2617(a) (amended 2011). That responsibility shifted to the Consumer Financial Protection Bureau ("CFPB") on June 16, 2014. 79 Fed. Reg. 34224 (June 16, 2014); *see* 12 U.S.C. §§ 2602(9), 2617(a). The current Regulation X took effect January 10, 2014. 12 C.F.R. §§ 1024.1–.41; 78 Fed. Reg. 10696.

The Deed states that the applicable law included RESPA and Regulation X "as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter." *Id.* at 11. Therefore, that the current Regulation X did not exist at the time of the Deed's execution does not alone affect the validity of Dail's claim.

However, Dail alleges that BANA violated Regulation X's prohibition of forced insurance in 2011. *See* ECF No. 1-3 at 5. At the time of the alleged violations, the current Regulation X under the CFPB that prohibits forced insurance did not exist. *See* 78 Fed. Reg. 10696. At that time, the old Regulation X under HUD was in effect and did not have these requirements. Further, courts have found that the CFPB's Regulation X does not apply retroactively. *See Spaulding v. Citifinancial Serv., L.L.C.*, No. 16-30173, 2018 WL 1698263, at *3–*4 (D. Mass. Apr. 6, 2018) (finding that § 1024.36 does not apply retroactively); *see also Searcy v. CitiMortgage, Inc.*, 733 F. App'x 735, 738 (5th Cir. 2018) (holding that § 1024.41 does not apply retroactively); *Campbell v. Nationstar Motrg.*, 611 F. App'x 288, 297–98 (6th Cir. 2015) (same); *Reed v. Bank of Am. Home Loans*, No. 13-3265, 2016 WL 3218720, at *10–*12 (D. Md. June 10, 2016) (same); *Kawah v. PHH Mortg. Corp.*, No. 15-6222, 2016 WL 7163086,

at *3 (E.D. Pa. Feb. 2, 2016) (same). Therefore, BANA could not have violated the CFPB's Regulation X in 2011.

Moreover, even if the force insurance provision of the current Regulation X did apply, Dail's claim is time-barred. First, Regulation X has a three-year statute of limitations. *See* 12 U.S.C. §§2605, 2614. Second, a breach of contract claim has a five-year statute of limitations in Virginia. Va. Code Ann. § 8.01-246(2). BANA allegedly placed the forced insurance on Dail seven years before she filed the instant lawsuit. Dail's claim has expired under both statutes.

The other alleged Regulation X violation is failure to respond to written requests under § 1024.37 when Thomas wrote BANA a letter in 2016. ECF No. 1-3 at 5–6. By this time, the CFPB Regulation X was enacted, so there is no *ex post facto* concern as before. Dail alleges that Thomas is not "on the mortgage note" but rather has an "interest" in the property. ECF No. 1-3 at 4, 9. Notably, Thomas is listed on the Note as "signing without obligation as to the indebtedness of the Note." *Id.* at 23. In other words, Thomas himself is not the borrower, his wife is. Section 1024.36(a) of Regulation X requires that a mortgage servicer to reply to written requests from a borrower. As such, BANA had no obligation to respond to Thomas's request for information, even if he has an interest in the property. *See Estate of Dawson v. Ditech Fin., L.L.C.*, 2017 WL 3471425, at *3 (E.D. Va. Aug. 11, 2017) (finding that non-borrower does not have standing to bring RESPA claim).

Because Regulation X is not retroactive, and Thomas is not a borrower, Dail fails to properly allege any Regulation X violations on BANA's behalf and therefore cannot state a claim for breach of contract.

Dail's claim for injunctive relief only succeeds if she can show "(1) irreparable injury, (2) remedies at law 'are inadequate to compensate for that injury,' (3) 'the balance of hardships

10

between the plaintiff and defendant' warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010)). Given that (1) there is no planned foreclosure sale and (2) her breach of contract claim fails, the Court finds that Dail cannot demonstrate irreparable injury, so this claim is also dismissed.[2]

### IV. CONCLUSION

Based on the above, Dail's Motion to Remand is **DENIED**. BANA's Motion to Dismiss is **GRANTED**. The matter is hereby **DISMISSED**. The Clerk is **DIRECTED** to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February 21, 2019

Raymond A. Jackson
United States District Judge

---

[2] To the extent Dail is requesting a preliminary injunction, such a request may only be granted if the requesting parties can demonstrate "(1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). For the same reasons stated above, Dail also fails to demonstrate she is likely to succeed on the merits, and such a request is denied.

11